**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF FLORIDA**

**TAMPA DIVISION**

CRAIG P. GASSANT,

Plaintiff,

v.

WORLD OMNI FINANCIAL CORP d/b/a SOUTHEAST TOYOTA FINANCE,

Defendant.

**CASE NO:** 8:26-cv-2603-JLB-SPF

CIVIL COMPLAINT

**JURY TRIAL DEMANDED**

SEP 8 2026 PM3:34
FILED - USDC - FLMD - TPA

## COMPLAINT

Plaintiff, Craig Gassant ("Plaintiff"), appearing pro se, brings this action against Defendant World Omni Financial Corp., d/b/a Southeast Toyota Finance ("World Omni" or "Defendant"), for a violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b); and Florida, Fla. Stat. §§ 679.601–679.628, and alleges as follows.

## JURISDICTION AND VENUE

**1.** This Court has federal-question jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p because this action arises under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 et seq.

**2.** Plaintiff is a "consumer" under 15 U.S.C. § 1681a(c), and Defendant is a "furnisher of information" under 15 U.S.C. § 1681s-2, and defined under 12 CFR § 1022.41(c).

**3.** Venue is proper under 28 U.S.C. § 1391(b) because Plaintiff resides in this District and a substantial part of the events giving rise to this claim, including Defendant's furnishing and investigation of the disputed information, occurred here.

**4.** This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiff's claim under Article 9 of the Uniform Commercial Code as adopted in Florida, Fla. Stat. §§ 679.601–679.628, because that claim arises from the same case or controversy as Plaintiff's FCRA claim, namely, the disposition of the vehicle and the resulting deficiency that Defendant furnished to the CRAs.

## PARTIES

**5.** Plaintiff Craig Gassant is a natural person residing at 1522 Big Oaks Dr., Apt. 105, Lakeland, Florida 33810.

**6.** Defendant World Omni Financial Corp., d/b/a Southeast Toyota Finance, is a corporation with its principal place of business at 250 Jim Moran Blvd., Deerfield Beach, Florida 33442.

## THE DISPUTED INFORMATION

**7.** Defendant maintained and furnished to consumer-reporting agencies ("CRAs") a consumer-credit tradeline concerning a motor vehicle account, account number ending in #78827 ("the Account"), following the repossession and disposition of the vehicle securing that account.

**8.** Defendant furnished, and Plaintiff disputed, the following specific items of information concerning the Account:

a. the post-repossession deficiency balance;

b. the account status (open, closed, and charged-off designations);

c. the reported Date Opened and Date of Last Activity;

d. the reported Date Closed; and

e. the payment history associated with the Account.

## THE CRA INVESTIGATION RESULTS

**9.** On December 17, 2025, Plaintiff sent Defendant a written dispute identifying the balance, account-status, and account-date information above as inaccurate, and requesting the records supporting the deficiency calculation, including the sale date, sale price, and itemized credits and expenses.

**10.** Plaintiff separately disputed the same information with Equifax, Experian, and Trans Union. Each CRA forwarded Plaintiff's dispute to Defendant, and each CRA thereby independently gave Defendant notice of Plaintiff's dispute within the meaning of 15 U.S.C. § 1681s-2(b).

**11.** Equifax informed Plaintiff that the Account, previously deleted from Plaintiff's Equifax file, had been reinserted, and that Defendant had certified

to Equifax that the reinserted information, including a balance of $7,409, was accurate. A true and correct copy of Equifax's dispute results is attached as **Exhibit A.**

**12.** Trans Union likewise informed Plaintiff that the Account had been deleted and reinserted, with a balance of $7,409 reported as accurate, matching the figure Defendant certified to Equifax. A true and correct copy of Trans Union's dispute results is attached as **Exhibit A-1.**

**13.** Experian's investigation of the identical tradeline, during that same general time period, resulted in Experian reporting a balance of $4,445 as accurate for the Account, with no indication that the tradeline had been deleted or reinserted. A true and correct copy of Experian's dispute results is attached as **Exhibit A-2.**

**14.** The Account is a single tradeline with a single accurate balance at any given time. The $7,409 balance Defendant certified as accurate to Equifax and Trans Union is irreconcilable with the $4,445 balance Experian verified as accurate for the same Account during the same period, a difference of $2,964. At least one of these figures was therefore inaccurate.

**15.** This discrepancy shows that Defendant did not conduct a reasonable investigation of the underlying account records in response to any of the three disputes: had Defendant actually reviewed the payment, credit, and disposition records reflected in its own account system, it could not have certified inconsistent balances, for the same account, as accurate to three separate CRAs within the same period.

**16.** Upon receiving notice of each CRA's dispute, Defendant was independently required by 15 U.S.C. § 1681s-2(b)(1) to: (A) investigate the

disputed information; (B) review all relevant information provided by that CRA; (C) report the results of the investigation to that CRA; (D) if the investigation found the information to be incomplete or inaccurate, report those results to all other nationwide CRAs to which Defendant had furnished the information; and (E) if the information was found to be inaccurate, incomplete, or could not be verified, modify, delete, or permanently block reporting of that item.

**17.** Because Defendant's own investigation of any one CRA's dispute could not simultaneously support both the $7,409 figure and the $4,445 figure, a reasonable investigation of any of the three disputes would have surfaced the conflict and triggered Defendant's duty under § 1681s-2(b)(1)(D) to report that finding to the other CRAs. Defendant did not do so, and all three figures remained furnished and verified as accurate notwithstanding the conflict between them. Based on the inconsistent reinvestigation results, the Defendant failed to conduct a reasonable investigation as required under § 1681s-2(b)(1)(A).

## THE RE-AGED CLOSED DATE

**18.** In addition to the balance, Plaintiff disputed the Date Closed reported for the Account. Trans Union's and Equifax's dispute results each include a Date Closed field for the Account; Experian's does not.

**19.** Plaintiff alleges that the Account was charged off and closed in November 2021. Nevertheless, Defendant reported a Date Closed of February 1, 2024 to Equifax and February 29, 2024 to Trans Union. Plaintiff disputes those dates because they do not match the Account's actual charge-off and closure history. Plaintiff further alleges that the later dates

inaccurately describe the Account and may improperly affect the period during which the derogatory information is reported.

**20.** The Account did **[n]**ot actually close in February 2024. The Account closed, and Defendant charged off the Account with the resulting deficiency, in November 2021, following the sale of the vehicle securing the Account.

**21.** The Date Closed figures Defendant certified to Trans Union and Equifax are each approximately three years later than the Account's actual closure and charge-off date. A discrepancy of this magnitude between a certified closed date and the account's actual charge-off date is not attributable to routine reporting variance or rounding, and reflects that the Account was re-aged, that is, reported with a closed date substantially later than the date the Account actually became delinquent and was charged off.

**22.** Had Defendant conducted a reasonable investigation of its own records, as required under 15 U.S.C. § 1681s-2(b)(1)(A), it would have discovered that the disputed information was inaccurate, triggering its obligation under 15 U.S.C. § 1681s-2(b)(1)(E) to either modify the information to report it accurately, delete it, or permanently block its reporting. Instead, the results of Defendant's investigation and subsequent reinvestigations demonstrate that Defendant failed to conduct a reasonable investigation as required by 15 U.S.C. § 1681s-2(b)(1)(A). See *Milgram v. Chase Bank USA, N.A.*, 72 F.4th 1212, 1217 (11th Cir. 2023) and Felts v. Wells Fargo Bank, N.A., 893 F.3d 1305, 1312–14 (11th Cir. 2018)

**THE PAYMENT STATUS HISTORY**

**23.** "Account Status" and "Payment Status" are separate and distinct fields in the consumer-reporting data furnishers use to report a tradeline, each with its own dedicated field on the reports at issue. ***Account Status*** reflects whether an account is open, closed, or was charged off, and includes a code specifically for reporting that a charge-off occurred. ***Payment Status*** is a different field that reflects the account's current payment condition for each reporting month. Plaintiff does not dispute that the Account's Account Status may properly reflect that a charge-off occurred; Plaintiff disputes Defendant's furnishing of the Payment Status field.

**24.** Standard consumer-reporting convention reflected in the payment-status codes that Equifax, Experian, and TransUnion each make available to furnishers requires that "CO" be furnished in the Payment Status field only in the month the charge-off occurs, because a charge-off means no further payment is contractually due. See Black's Law Dictionary (11th ed. 2019) (defining "charge off" as "[t]o treat (an account receivable) as a loss or expense because payment is unlikely; to treat as a bad debt"). The following month's Payment Status should reflect the account as closed, denoted "CLS," and every month thereafter should reflect that a closed account has no further payment activity to report, using the "No Data" or "Not Reported" codes ("ND" or "NR") available for that purpose. "CO" is a one-time event code, not a status properly reported month after month once an account has closed. It is redundant to furnish "CO" which signifies that no further payment on the account is expected every month thereafter.

**25.** By continuing to furnish "CO" in the Payment Status field for over three years, Defendant is not merely repeating a historical event; Defendant is affirmatively representing, in each reporting month, that the Account's

current payment condition remains "charge-off" and that no further payment is currently expected on that basis. That representation is inaccurate: the Account's last, and correct, Payment Status was "CLS," not "CO," because the Account closed following the charge-off and has had no payment activity of any kind since.

**26.** Trans Union's dispute results reflect a Payment Status of "X," denoting "Unknown," for the Account. Defendant certified this "Unknown" status as accurate in connection with the Account's reinsertion to Trans Union. Information that is, by the code's own definition, unknown cannot simultaneously have been verified as accurate; Defendant's certification of an "Unknown" Payment Status as accurate is itself an admission that the status furnished to Trans Union could not be, and was not, verified. The investigation and subsequent reinvestigations demonstrate that Defendant failed to conduct a reasonable investigation as required by 15 U.S.C. § 1681s-2(b)(1)(A), and failed to comply with 15 U.S.C. § 1681s-2(b)(1)(E) by failing to modify, delete, or permanently block the information.

**27.** By continuously furnishing "CO" to Equifax and Experian every month since November 2021, rather than furnishing "CLS" and then "ND" as a properly closed account requires, Defendant has prevented the Account from aging as a closed account should, independent of any effect on Plaintiff's credit score. This continuous, recurring misreporting of the Account's Payment Status is separately inaccurate, incomplete, and/or unverifiable, apart from the balance and Date Closed discrepancies described above. The investigation and subsequent reinvestigations demonstrate that Defendant failed to conduct a reasonable investigation as required by 15 U.S.C. § 1681s-2(b)(1)(A), and failed to comply with 15

U.S.C. § 1681s-2(b)(1)(E) by failing to modify, delete, or permanently block the information.

**28.** Upon information and belief, both FICO and VantageScore weigh payment history as the single largest component of a consumer's credit score. It is therefore imperative that information reported in this field be accurate, complete, verifiable, and fully compliant with FCRA requirements, given its direct impact on Plaintiff's creditworthiness, credit standing, and credit capacity.

**29.** Also, upon information and belief, a consumer's credit score naturally recovers as time passes from the date negative information is first reported. A charge-off constitutes "negative information" as defined under 15 U.S.C. § 1681s-2(a)(7)(G)(i). By continuously and erroneously furnishing a payment status of "CO" each month, Defendant has effectively reset the clock on this negative information, preventing the passage of time necessary for the account to naturally recover and thereby unfairly suppressing Plaintiff's credit score.

## THE VEHICLE DISPOSITION

**30.** The Account arose from Plaintiff's acquisition of the vehicle primarily for personal, family, or household purposes, secured by a security interest in the vehicle held primarily for personal, family, or household purposes. The transaction is therefore a "consumer-goods transaction" and "consumer transaction" as those terms are defined in Fla. Stat. § 679.1021(1)(w)–(z), Plaintiff is a "consumer obligor" and debtor within the meaning of that section, and the vehicle constitutes "consumer goods."

**31.** Because this is a consumer-goods transaction, Defendant's disposition of the vehicle is subject to the enhanced notice-content requirements of Fla. Stat. § 679.614 and Plaintiff's explanation rights under Fla. Stat. § 679.616, in addition to the general disposition requirements of Fla. Stat. §§ 679.610–679.615.

**32.** Florida's enactment of UCC Article 9 required Defendant, as the secured party, to dispose of the repossessed vehicle in a commercially reasonable manner, Fla. Stat. § 679.610(2), and to send Plaintiff a notice of disposition containing the information required by Fla. Stat. § 679.614 before the sale.

**33.** Pursuant to Fla. Stat. § 679.626(1)(a), Plaintiffs December 17, 2025 letter requested documents confirming Defendant's compliance with the statute, including the date, method, and location of sale; the purchaser's identity; the Bill of Sale evidencing gross sale price; and an itemization of deductions under Fla. Stat. § 679.615 used to calculate the deficiency.

**34.** This information is neither a trade secret nor otherwise protected. As owner of the vehicle at the time of sale, Plaintiff was entitled to challenge Defendant's Explanation of Calculation of Surplus or Deficiency, including the $768.00 "Retaking Expense," the $750.89 "Preparation for Disposition Expense," and the $130.00 "Disposition Expense".

**35.** Defendant did not provide these records or otherwise substantiate that the sale was conducted in a commercially reasonable manner or that proper notice was given.

**36.** Fla. Stat. § 679.616 entitles a debtor to an explanation of the calculation of any surplus or deficiency. In response to Plaintiff's request,

Defendant provided Plaintiff an Explanation of Calculation of Surplus or Deficiency reflecting a deficiency balance of $6,544.06. A true and correct copy of this document is attached as **Exhibit D**

**37.** The $6,544.06 deficiency reflected in Defendant's own Explanation of Calculation matches neither the $7,409 balance Defendant certified as accurate to Equifax and Trans Union, nor the $4,445 balance Defendant verified as accurate at Experian, for the identical Account. Defendant has therefore furnished, certified, or otherwise represented three different, mutually irreconcilable balance and deficiency figures for a single account and a single disposition: $7,409 (Equifax and Trans Union), $4,445 (Experian), and $6,544.06 (Defendant's own Explanation of Calculation to Plaintiff).

**38.** Because these three figures cannot be reconciled with one another, none of them can be verified as accurate against Defendant's own underlying account, payment, and disposition records. The information Defendant furnished and certified to each CRA is therefore not only potentially inaccurate, but unverifiable: Defendant's own records, taken together, cannot establish which figure, if any, reflects the true balance or deficiency owed on the Account.

**39.** Defendant's inability to produce a single, internally consistent deficiency calculation across its own accounting records and its representations to the CRAs demonstrates that Defendant did not properly calculate the deficiency using the credits, expenses, and charges required by Fla. Stat. § 679.615, and that the deficiency Defendant has reported and sought to collect is not supported by Defendant's own records.

**40.** Absent a reconciled and substantiated calculation, Plaintiff disputes that Defendant obtained a commercially reasonable price for the vehicle or properly calculated any deficiency, and disputes that Defendant is entitled to collect or report a deficiency balance calculated in noncompliance with Fla. Stat. §§ 679.610–679.616.

## ADVERSE ACTIONS AND DAMAGES

**41.** Between July 8 and July 23, 2026, Plaintiff received adverse credit decisions in connection with automobile-financing and credit card applications from MidFlorida Credit Union, Mercedes-Benz Financial Services, and Truist Bank. True and correct copies of the related adverse-action notices are attached as **Exhibits B, C, and E.**

**42.** On July 8, 2026, Plaintiff applied for automobile financing from MidFlorida Credit Union. In connection with that application, MidFlorida obtained Plaintiff's Experian consumer report, which erroneously reflected an unverifiable charge-off balance of $4,445, owed to World Omni on Account No. ending in 78827. MidFlorida denied Plaintiff's application, citing collection and/or charged-off accounts as the principal reason for its decision. Plaintiff only has one charged-off account on his Experian report, which is the subject "Account" of this action. The adverse-action notice, attached as **Exhibit B**, identifies Experian as the consumer reporting agency used in making the decision.

**43.** On July 8, 2026, Plaintiff applied for financing from Mercedes-Benz Financial Services. In connection with the application, Mercedes-Benz obtained Plaintiff's TransUnion consumer report, which erroneously reflected an unverifiable charge-off balance of $7,409, owed to World Omni.

Mercedes-Benz denied Plaintiff's application, citing the recency or unknown timing of the delinquency and the amount past due on the account. Plaintiff only has one charged-off account on his TransUnion report, which is the subject "Account" of this action. The adverse-action notice, attached as **<u>Exhibit C</u>**, identifies TransUnion as the consumer reporting agency used in making the decision.

**44.** On September 3, 2026, Plaintiff applied for a credit card from Truist Bank. Plaintiff's Equifax report, which contained World Omni's erroneous and unverifiable charge-off balance of $7,409 balance. Truist Bank denied the application because of a charge off account. The notice identifies Equifax as the reporting agency used. Plaintiff only has one charged-off account on his Equifax report, which is the subject "Account" of this action. The adverse-action notice, attached as

**45.** The inaccurate World Omni tradeline was a material and substantial contributing factor in each lending decision because it reported inconsistent balances across Plaintiff's Equifax, Experian, and TransUnion credit reports, thereby negatively affecting the lenders' assessment of Plaintiff's creditworthiness. Plaintiff does not allege that the tradeline was the sole basis for every decision; rather, Plaintiff alleges that it was either a stated adverse factor or a materially contributing factor in the lenders' decisions.

**46.** As a direct result, Plaintiff suffered actual damages, including: (a) denial of requested automobile financing; (b) loss of the opportunity to purchase the vehicle on the requested terms; and (c) emotional distress, which includes loss of sleep, anxiety, embarrassment and humiliation, and reputational harm caused by the continued publication and verification of inaccurate Account information.

**47.** Plaintiff incurred these damages after the applicable CRA notified World Omni of the disputes and World Omni failed to conduct a reasonable investigation or correct the inaccurate information. A plaintiff asserting a furnisher claim must allege the account, the inaccurate information, the CRA dispute, notice to the furnisher, and failure to reasonably investigate.

**48.** Plaintiff seeks actual damages under 15 U.S.C. § 1681o and, if established, statutory and punitive damages for willful noncompliance under 15 U.S.C. § 1681n. Plaintiff also seeks damages for each separately caused lender decision and does not attribute one lender's use of a particular CRA report to a different CRA without evidentiary support.

## COUNT I: VIOLATION OF 15 U.S.C. § 1681s-2(b) AS TO EQUIFAX

**49.** Plaintiff incorporates paragraphs 1 through 38 above.

**50.** Defendant furnished, and certified as accurate, a balance of $7,409 and a Date Closed of February 1, 2024 for the Account to Equifax following its reinsertion of the tradeline.

**51.** Equifax gave Defendant notice of Plaintiff's dispute, triggering Defendant's duties under 15 U.S.C. § 1681s-2(b) with respect to the information Defendant furnished to Equifax.

**52.** Defendant's investigation was unreasonable, and the $7,409 balance Defendant certified to Equifax was inaccurate, incomplete, and/or unverifiable, because Defendant certified that figure without reconciling it against the $4,445 balance it was concurrently furnishing to Experian and the $6,544.06 deficiency reflected in its own Explanation of Calculation provided directly to Plaintiff, for the identical Account, and because

Defendant failed to report the resulting inconsistency to Equifax as required by 15 U.S.C. § 1681s-2(b)(1)(D).

**53.** Defendant's investigation was independently unreasonable, and the Date Closed Defendant certified to Equifax was inaccurate, incomplete, and/or unverifiable, because Defendant certified a Date Closed of February 1, 2024, approximately three years after the Account actually closed and was charged off in November 2021, reflecting that the Account was re-aged.

**54.** Defendant's investigation was further independently unreasonable, and the Payment Status Defendant has furnished to Equifax is inaccurate, because Defendant has continuously furnished "CO" in the Payment Status field, distinct from the Account Status field, in every month since the November 2021 charge-off, representing in each such month that the Account's current payment condition remains charge-off, when the Account's last and correct Payment Status was "CLS."

**55.** A reasonable investigation would have uncovered each of these inconsistencies. See *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1312–14 (11th Cir. 2018).

**56.** Defendant's conduct was, at minimum, negligent under 15 U.S.C. § 1681o. Plaintiff further alleges, in the alternative, that Defendant's conduct was willful under 15 U.S.C. § 1681n, particularly with respect to the re-aged Date Closed, which reflects a discrepancy of approximately three years not attributable to routine reporting error.

**57.** As a direct and proximate result of Defendant's inaccurate reporting, Plaintiff applied for vehicle financing with two separate lenders, both of which denied Plaintiff's application, citing the disputed information

appearing on Plaintiff's credit report. Consequently, Plaintiff lost the vehicle deal in its entirety and was unable to secure financing from any lender for the vehicle. Thereafter, in an effort to secure alternative transportation, Plaintiff applied for a credit card with Truist Bank to cover transportation-related expenses. This application was likewise denied, again due to the same inaccurate information furnished by Defendant. As a result of Defendant's conduct, Plaintiff suffered damages including, denial of a credit card needed for essential transportation expenses, sleeplessness, anxiety, stress-related symptoms, inability to get groceries and other personal health related items.

## COUNT II: VIOLATION OF 15 U.S.C. § 1681s-2(b) AS TO EXPERIAN

**58.** Plaintiff incorporates paragraphs 1 through 38 above.

**59.** Defendant furnished, and verified as accurate, a balance of $4,445 for the Account to Experian.

**60.** Experian gave Defendant notice of Plaintiff's dispute, triggering Defendant's duties under 15 U.S.C. § 1681s-2(b) with respect to the information Defendant furnished to Experian.

**61.** Defendant's investigation was unreasonable, and the $4,445 balance Defendant verified to Experian was inaccurate, incomplete, and/or unverifiable, because Defendant verified that figure without reconciling it against the $7,409 balance it was concurrently certifying to Equifax and Trans Union and the $6,544.06 deficiency reflected in its own Explanation of Calculation provided directly to Plaintiff, for the identical, reinserted Account, and because Defendant failed to report the resulting inconsistency to Experian as required by 15 U.S.C. § 1681s-2(b)(1)(D).

**62.** Defendant's investigation was further independently unreasonable, and the Payment Status Defendant has furnished to Experian is inaccurate, because Defendant has continuously furnished "CO" in the Payment Status field, distinct from the Account Status field, in every month since the November 2021 charge-off, representing in each such month that the Account's current payment condition remains charge-off, when the Account's last and correct Payment Status was "CLS."

**63.** A reasonable investigation would have uncovered each of these inconsistencies. See Felts v. Wells Fargo Bank, N.A., 893 F.3d 1305, 1312–14 (11th Cir. 2018).

**64.** Defendant's conduct was, at minimum, negligent under 15 U.S.C. § 1681o. Plaintiff further alleges, in the alternative, that Defendant's conduct was willful under 15 U.S.C. § 1681n, particularly with respect to Defendant's continuous, multi-year furnishing of a charge-off status that never transitioned to reflect the Account as closed.

**65.** As a direct and proximate result of Defendant's inaccurate reporting, Plaintiff applied for vehicle financing with Mercedes-Benz Financing, who denied Plaintiff's application based on his TransUnion report, citing information appearing on Plaintiff's credit report, that had been previously disputed as inaccurate, incomplete, and unverifiable several times through TransUnion. As a result of Defendant's conduct, Plaintiff suffered damages including, but not limited to, loss of the vehicle purchase, loss of favorable financing terms, and emotional distress, such as embarrassment, humiliation, loss of concentration and sleep, resulting from the inconvenience caused by lack of reliable transportation.

**COUNT III: VIOLATION OF 15 U.S.C. § 1681s-2(b) AS TO TRANSUNION**

**66.** Plaintiff incorporates paragraphs 1 through 40 above.

**67.** Defendant furnished, and certified as accurate, a balance of $7,409 and a Date Closed of February 29, 2024 for the Account to Trans Union following its reinsertion of the tradeline, matching the balance figure Defendant certified to Equifax.

**68.** Trans Union gave Defendant notice of Plaintiff's dispute, triggering Defendant's duties under 15 U.S.C. § 1681s-2(b) with respect to the information Defendant furnished to Trans Union.

**69.** Defendant's investigation was unreasonable, and the $7,409 balance Defendant certified to Trans Union was inaccurate, incomplete, and/or unverifiable, because Defendant certified that figure without reconciling it against the $4,445 balance it was concurrently furnishing to Experian and the $6,544.06 deficiency reflected in its own Explanation of Calculation provided directly to Plaintiff, for the identical Account, and because Defendant failed to report the resulting inconsistency to Trans Union as required by 15 U.S.C. § 1681s-2(b)(1)(D).

**70.** Defendant's investigation was independently unreasonable, and the Date Closed Defendant certified to Trans Union was inaccurate, incomplete, and/or unverifiable, because Defendant certified a Date Closed of February 29, 2024, approximately three years after the Account actually closed and was charged off in November 2021.

**71.** Defendant's investigation was further, and most plainly, unreasonable because Defendant certified a Payment Status of "X," denoting "Unknown," as accurate. Information that is, by definition, unknown cannot

simultaneously have been verified as accurate; Defendant's own certification establishes that the information it furnished to Trans Union was unverifiable.

**72.** A reasonable investigation would have uncovered each of these inconsistencies. See *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1312–14 (11th Cir. 2018).

**73.** Defendant's conduct was, at minimum, negligent under 15 U.S.C. § 1681o. Plaintiff further alleges, in the alternative, that Defendant's conduct was willful under 15 U.S.C. § 1681n, particularly with respect to Defendant's certification of an "Unknown" Payment Status as accurate, which is inconsistent on its face.

**74.** As a direct and proximate result of Defendant's inaccurate reporting, Plaintiff applied for vehicle financing with Mercedes-Benz Financing, who denied Plaintiff's application based on his TransUnion report, citing information appearing on Plaintiff's credit report, that had been previously disputed as inaccurate, incomplete, and unverifiable several times through TransUnion. As a result of Defendant's conduct, Plaintiff suffered damages including, but not limited to, loss of the vehicle purchase, loss of favorable financing terms, and emotional distress, such as embarrassment, humiliation, anxiety, loss of concentration and sleep, resulting from the inconvenience caused by lack of reliable transportation.

## COUNT IV: VIOLATION OF UCC ARTICLE 9 (FLA. STAT. §§ 679.610–679.616)

**75.** Plaintiff incorporates paragraphs 1 through 38 above.

**76.** The Account was a consumer-goods transaction and consumer transaction as defined in Fla. Stat. § 679.1021(1)(w)–(z), Plaintiff was a

consumer obligor and debtor, and the vehicle was consumer goods, within the meaning of that section.

**77.** Defendant was a secured party disposing of collateral within the meaning of Fla. Stat. § 679.610, and was required to conduct that disposition, including its method, manner, time, and place, in a commercially reasonable manner.

**78.** Defendant was further required to send Plaintiff reasonable notification of the disposition satisfying Fla. Stat. §§ 679.611 and 679.614, to calculate any deficiency using only the credits, expenses, and charges properly applied under Fla. Stat. § 679.615, and to provide Plaintiff an accurate explanation of that calculation under Fla. Stat. § 679.616.

**79.** Defendant failed to establish that the disposition was commercially reasonable, that adequate notice was given, or that the deficiency it calculated and furnished was properly supported, despite Plaintiff's specific request for the records that would substantiate compliance.

**80.** Defendant's own Explanation of Calculation of Surplus or Deficiency, reflecting a $6,544.06 deficiency, is itself irreconcilable with the $7,409 and $4,445 figures Defendant certified or verified as accurate to the CRAs for the same Account, confirming that Defendant did not calculate the deficiency in accordance with Fla. Stat. § 679.615 or provide the accurate explanation required by Fla. Stat. § 679.616.

**81.** As a direct and proximate result, Plaintiff has been subjected to, and Defendant has furnished to CRAs, a deficiency balance to which Defendant has not shown it is entitled, causing Plaintiff actual damages.

**82.** Under Fla. Stat. § 679.625, Plaintiff is entitled to recover damages for Defendant's noncompliance with Article 9, and to the extent Defendant seeks to collect or has reported a deficiency, Plaintiff is entitled to have that deficiency reduced or eliminated to the extent Defendant cannot establish compliance with Fla. Stat. §§ 679.610–679.616.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant World Omni Financial Corp. and award:

A. Actual damages in an amount to be proven at trial;

B. Statutory and punitive damages under 15 U.S.C. § 1681n, to the extent Defendant's conduct is found willful;

C. A determination that Defendant did not comply with Fla. Stat. §§ 679.610–679.616 (Count IV), and damages and/or a reduction or elimination of any deficiency under Fla. Stat. § 679.625;

D. Costs and reasonable attorney's fees to the extent authorized by law;

E. An order requiring Defendant to delete the inaccurate information it continues to furnish concerning Plaintiff; and

F. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

CRAIG P. GASSANT
Plaintiff, Pro Se
1522 Big Oaks Dr., Apt. 105
Lakeland, Florida 33810-0814
Telephone: 305-985-9932
Email: one3rdnation@gmail.com

Date: 09/08/2026